**OLSHAN FROME WOLOSKY LLP**
1325 Avenue of the Americas
New York, New York 10019
Tel: (212) 451-2300
Fax: (212) 451-2222

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRANS-LUX CORPORATION and TRANS-LUX CANADA, LTD., <br><br> Plaintiffs, <br><br> v. <br><br> VISUA CORP., CRAIG KATT, GARY GALASSO and DENNIS LYTE, <br><br> Defendants. | COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF <br><br> Case No.: <br><br> JURY TRIAL DEMANDED |

Plaintiffs Trans-Lux Corporation and Trans-Lux Canada, Ltd. (collectively, "Plaintiffs" or "Trans-Lux"), by and through their attorneys, Olshan Frome Wolosky LLP, as and for their Complaint For Damages And Injunctive Relief, and their Jury Demand against Visua Corp., Craig Katt, Gary Galasso and Dennis Lyte, hereby allege as follows:

**NATURE OF ACTION**

1. This is a civil action for preliminary and permanent injunctive relief, monetary damages and additional remedies provided under the Lanham Act and the laws of the State of New York.

2. The Defendants are former employees of Plaintiffs who abruptly started a competing business. Plaintiffs recently discovered that Defendants are unfairly competing, falsely advertising and committing reverse passing off by repeatedly and willfully misrepresenting

themselves as the origin and source of Plaintiff's LED video scoreboard services. Defendants have improperly taken and are currently displaying photographs of Plaintiff's work, which they are misrepresenting as Defendants' own work. Defendants' website also includes Trans-Lux Corporation's Trademarked "Fair-Play by Trans-Lux" logo. Through their actions, Defendants are unfairly capitalizing on Plaintiffs' goodwill and misleading current and potential customers by diverting them from Plaintiffs to themselves.

## THE PARTIES

3. Plaintiff Trans-Lux Corporation is a corporation organized and existing under the law of the State of Delaware, with its principal place of business located at 445 Park Avenue, Suite 2001, New York, New York 10022. Trans-Lux is publicly traded on the OTC (Over-The-Counter) Exchange.

4. Plaintiff Trans-Lux Canada, Ltd. ("Trans-Lux Canada") is a wholly-owned subsidiary of Trans-Lux with its principal place of business located at 109-3228 South Service Road, Burlington, Ontario, Canada L7N 3H8.

5. Upon information and belief, Defendant Visua Corp. ("Visua") is a corporation with its principal place of business at 11 South Gilmer Street, Cartersville, Georgia 30120.

6. Defendant Craig Katt ("Katt") is a former employee of Trans-Lux. Upon information and belief, Katt is a resident of Georgia.

7. Defendant Gary Galasso ("Galasso") is a former employee and fiduciary of Trans-Lux. Upon information and belief, Galasso is a resident of Iowa.

8. Lyte is a former employee of Trans-Lux and a former General Manager and fiduciary of Trans-Lux Canada. Upon information and belief, Lyte is a resident of Ontario, Canada.

3849151-1

9. Katt, Galasso and Lyte are the moving, active and conscious forces behind Visua's illegal and improper conduct described herein. As further described below, the acts of Katt, Galasso and Lyte have caused harm to Trans-Lux here in New York.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over the within dispute, as this action arises under federal law, i.e., the Lanham Trademark Act of 1946, as amended (15 U.S.C. § 1051, *et seq.*).

11. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

12. Trans-Lux's principal place of business is located in this judicial district.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## FACTS COMMON TO ALL CLAIMS

TRANS-LUX'S LED DISPLAY BUSINESS

14. For nearly a century, Trans-Lux has been a world leader in designing, selling, renting, installing and servicing signs and display systems incorporating cutting-edge technology. In 1923, Trans-Lux installed the first projection ticker in the world at the New York Stock Exchange.

15. Over the years, Trans-Lux evolved into real-time, programmable electronic information display systems and scoreboards. Trans-Lux currently supplies LED (light-emitting diode) digital displays and scoreboards installed at sporting stadiums, arenas, universities and commercial establishments around the world. The evolution of the business included the purchase of Fair-Play, a scoreboard manufacturer, in the 1990s.

16. In addition to the employees who work at Trans-Lux's business headquarters in New York, Trans-Lux also employs dozens of workers in Iowa and Missouri. A manufacturing

facility in the United States that will employ about 50 workers is in the process of moving from Iowa to Missouri. Additional employees will remain in Iowa.

17. Plaintiffs partner with businesses such as Toshiba, Sony and ANC/Learfield to design, manufacture, deliver and install LED video displays and scoreboards in amateur and professional sporting facilities, in museums, casinos, retail and other public-oriented businesses.

18. Throughout its decades of existence, Trans-Lux has built up considerable goodwill in its name and reputation for delivering products and serviced of the highest quality to its business partners and customers.

19. The business of manufacturing and installing LED displays and scoreboards is a specialized industry that requires a large commitment of resources from the purchasers of the products. Therefore, when selecting a company to supply these items, the supplier's ability to demonstrate that it has completed similar projects in the past is of great importance. Thus, prior experience and proven ability to deliver are key components the goodwill Trans-Lux has established.

20. By falsely representing they have completed and delivered Plaintiffs' projects, Defendants are using false or misleading information to persuade the market to purchase from them rather than from Plaintiffs.

21. Examples of projects created by Trans-Lux but claimed by Defendants include the scoreboard at the beautiful BB&T Ballpark in Charlotte, North Carolina; the Strong National Museum of Play in Rochester, New York; and the sports book at The Venetian Resort and Casino in Las Vegas, Nevada.

22. Defendants Katt, Galasso and Lyte have all signed written agreements requiring: (a) employees to return or destroy all employer materials upon their departure; (b) the non-disclosure of proprietary or confidential information; (c) the assignment to Plaintiffs of all

intellectual property rights in their work product; and (d) non-disparagement of Plaintiffs after the termination of employment.

DEFENDANTS' HISTORY AT TRANS-LUX

23. Katt was a Trans-Lux Vice-President for approximately three years.

24. As a Vice-President, Katt owed Trans-Lux a fiduciary duty to act in the company's best interests at all times.

25. On or about August 27, 2012, Katt signed a Confidentiality and Proprietary Rights Agreement with Trans-Lux ("the Katt Confidentiality Agreement").

26. In the Katt Confidentiality Agreement, Katt agreed that all of his work product created in the course of his employment "shall be the sole and exclusive property of the Employer."

27. Katt further agreed to return any company property upon the termination of his employment. The Katt Confidentiality Agreement provided as follows:

> Upon (i) voluntary or involuntary termination of the Employee's employment […] the Employee shall (a) provide or return to the Employer any and all Employer Group property, including… computers, cell phones, smart-phones […] and all Employer Group documents and materials belonging to the Employer and stored in any fashion, including but not limited to those that constitute or Contain any Confidential Information or Work Product, that are in the possession or control of the Employee, whether they were provided to the Employee by the Employer Group or any of its business associates or created by the Employee in connection with his/her employment by the Employer and (b) delete or destroy all copies of any such documents and materials not returned to the Employer that remain in the Employee's possession or control, including those stored on any non-Employer Group devices, networks, storage locations and media in the Employee's possession or control.

28. In the Katt Confidentiality Agreement, Katt further agreed that any copyrightable work product he created was a work for hire owned exclusively by the Employer:

> The Employee acknowledges that, by reason of being employed by the Employer at the relevant times, to the extent permitted by law, all of the Work Product consisting of copyrightable subject matter is "work made for hire" as defined in

5

3849151-1

the Copyright Act of 1976 (17 U.S.C. § 101), and such copyrights are therefore owned by the Employer. To the extent that the foregoing does not apply, the Employee hereby irrevocably assigns to the Employer, for no additional consideration, the Employee's entire right, title and interest in and to all Work Product and Intellectual Property Rights therein, including the right to sue, counterclaim and recover for all past, present and future infringement, misappropriation or dilution thereof, and all rights corresponding thereto throughout the world.

29.     The Katt Confidentiality Agreement further provided that Katt would not use Trans-Lux's proprietary materials as follows:

> The Employee understands and acknowledges that during the course of employment by the Employer, he/she will have access to and learn about confidential, secret and proprietary documents, materials and other information, in tangible and intangible form, of and relating to the Employer Group and its businesses and existing and prospective customers, suppliers, investors and other associated third parties ("Confidential Information"). The Employee further understands and acknowledges that this Confidential Information and the Employer's ability to reserve it for the exclusive knowledge and use of the Employer Group is of great competitive importance and commercial value to the Employer, and that improper use or disclosure of the Confidential Information by the Employee might cause the Employer to incur financial costs, loss of business advantage, liability under confidentiality agreements with third parties, civil damages and criminal penalties.

30.     The term Confidential Information is defined by the Katt Confidentiality Agreement to include all proprietary documents, marketing and advertising information as well as graphics, drawings and sketches.

31.     The Katt Confidentiality Agreement further provides:

> The Employee agrees and covenants: (i) to treat all Confidential Information as strictly confidential; […] and (iii) not to access or use any Confidential Information, and not to copy any documents, records, files, media or other resources containing any Confidential Information, or remove any such documents, records, files, media or other resources from the premises or control of the Employer Group, except as required in the performance of the Employee's authorized employment duties to the Employer or with the prior consent of an authorized officer acting on behalf of the Employer Group in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent).

32.     In the Katt Confidentiality Agreement, Katt further agreed not to disparage Trans-Lux:

6

3849151-1

>The Employee agrees and covenants that he/she will not at any time make, publish or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments or statements concerning the Employer Group or its businesses, or any of its employees, officers, and existing and prospective customers, suppliers, investors and other associated third parties. Katt continued to serve as Trans-Lux's Vice-President through January 2016, at which time he was let go by Trans-Lux.

33. With respect to the prospective injunctive relief, the Katt Confidentiality Agreement agreed to jurisdiction in New York and provided as follows:

>In the event of a breach or threatened breach by the Employee of any of the provisions of this Agreement, the Employee hereby consents and agrees that the Employer shall be entitled to seek, in addition to other available remedies, a temporary or permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that monetary damages would not afford an adequate remedy, and without the necessity of posting any bond or other security. The aforementioned equitable relief shall be in addition to, not in lieu of, legal remedies, monetary damages or other available forms of relief.

34. Katt continued to serve as Trans-Lux's Vice-President through January 2016, at which time he was terminated by Trans-Lux.

35. Unbeknownst to Plaintiffs at the time, Katt founded Visua as a competing business in early 2015. Upon information and belief, Katt is now Visua's President/Partner and is a moving, active and conscious force behind the acts of Visua described herein.

36. Galasso was the General Manager of Trans-Lux's facility in Iowa. As such, he had access to Plaintiffs' confidential and proprietary information, as well as direct contact with their customers, for nearly all of Plaintiffs' projects.

37. On or about March 11, 1998, Galasso signed an Agreement Covering Certain Aspects of Employment, Protecting Confidentiality and Prohibiting Unfair Competition ("the Galasso Confidentiality Agreement").

38. In the Galasso Confidentiality Agreement, Galasso agreed he would not compete with Trans-Lux:

> During Employee's employment by Company, Employee shall: (i) use best efforts to promote the interests of the Company and will not engage in any other business activity which directly or indirectly interferes with Employee's duties with the Company; (ii) not invest in or be affiliated with any company engaged in a business competitive to any business of the Company except for investments in companies listed on a national securities exchange; and (iii) not use any third party's confidential information on company's behalf unless the Company has been authorized in writing by such third party.

39. In the Galasso Confidentiality Agreement, Galasso further agreed that he would not use Trans-Lux's proprietary or confidential materials for his own purposes:

> Employee acknowledges Company's confidential and proprietary information, including but not limited to customer lists, customer contracts, customer agreements, vendors, pricing, products and service costs, plans and other products and services information, developments, financial and other business information, methods and strategies and third party information provided to Company in confidence, shall be held in confidence and [sic] during and after Employee's employment (i) may not be disclosed to or used by third parties or (ii) used by Employee except on behalf of Company.

40. Galasso further agreed to return any company property upon the termination of his employment. The Galasso Confidentiality Agreement provided as follows:

> All company information and property shall be immediately returned to the Company on termination of Employee's employment, including but not limited to, all samples, equipment, materials, lists, drawings, correspondence, files, reports, and other data, and discs, tapes and other compilations and records, and all copies thereof. For two (2) years following termination of Employee's employment by Company for any reason, Employee shall not, directly or indirectly, solicit or assist in obtaining business from a customer of Company during the two (2) year period prior to such termination with respect to products or services competitive with products or services of Employer.

41. In the Galasso Confidentiality Agreement, Galasso further agreed not to disparage Trans-Lux:

> For two (2) years following termination of employment, Employee will not solicit or hire any Company employee who is an employee at the time of such termination, on behalf of Employee or any third party. At no time during or after employment shall Employee malign or otherwise disparage Company, its products, services, personnel or business.

8

3849151-1

42. In the Galasso Confidentiality Agreement, Galasso agreed that all Company developments in which Galasso was involved were the sole property of the Company.

43. With respect to the prospective injunctive relief, the Galasso Confidentiality Agreement provided as follows:

> Employee acknowledges that the Company may be irreparably damaged by a breach of this Agreement and may obtain an injunction enjoining any such breach in addition to any other remedy available to the Company under law.

44. In early 2016, Galasso, without any advance notice, suddenly left Trans-Lux to work for Visua.

45. Upon information and belief, Galasso is currently Visua's Vice President of Operations, and is a moving, active and conscious force behind the acts of Visua described herein.

46. Lyte was employed by Trans-Lux, and then Trans-Lux Canada for approximately 30 years.

47. On or about April 4, 1996, Lyte signed an Agreement Covering Certain Aspects of Employment, Protecting Confidentiality and Prohibiting Unfair Competition ("the Lyte Confidentiality Agreement").

48. The Lyte Confidentiality Agreement contains prohibitive language identical to the language quoted above from the Galasso Confidentiality Agreement.

49. Lyte was General Manager of Trans-Lux Canada when he resigned in early 2016 to work for Visua.

50. Upon information and belief, Defendant Dennis Lyte ("Lyte") is currently an employee and Senior Consultant for Visua, and is a moving, active and conscious force behind the acts of Visua described herein..

DEFENDANTS' WRONGFUL CONDUCT

51. According to the profile Katt created on the LinkedIn website, Katt formed Visua in March 2015, a fact previously unbeknownst to Trans-Lux.

52. Defendants started Visua for the purpose of competing with Plaintiffs. On Lyte's LinkedIn profile, Lyte boasts that "the time has come for a disruption in the industry and I am thrilled to be a part of it."

53. Lyte's LinkedIn profile further confuses consumers by representing some a <u>current</u> affiliation with Plaintiffs. Beneath the information about Visua, Lyte states as follows:

> TransLux can help you manage your business by keeping the world focused on you. We understand the challenges of today's multimedia and growing communications environment in which businesses must compete; therefore, we are equipped to offer technical solutions to help you promote your product. Let me show you how to make the most of your communications.

54. Defendants advertise and promote their business through a variety of means, including on the LinkedIn website and on Defendants' own site, www.visuacorp.com ("the Visua site"). Upon information and belief, Katt, Galasso and Lyte were all personally involved in determining the content of the Visua site.

55. Despite being a new company, Defendants falsely represent on the Visua site that their "portfolio" includes at least 24 projects, including Plaintiffs' Strong Museum project, which is located in the state of New York. *See* www.visuacorp.com/portfolio.

56. Several projects listed by Defendants in their "portfolio" are actually Plaintiff's projects that Defendants are passing off as their own. These projects include the ones that Defendants display as: the Strong Museum, Toronto Union Station, Hoosier Park Racing & Casino, Sheridan College and the Regent Park Arts & Cultural Center. *See* www.visuacorp.com/portfolio.

10

57.     To further their scheme to pass off Plaintiffs' work as Defendants' own, the Visua site displays photographs of a project Trans-Lux Canada created for TD Waterhouse in Toronto plus the Strong Museum, both of which are accompanied by Lyte's signature, clearly conveying the false and/or misleading message that Lyte is responsible for the projects. *See* www.visuacorp.com/led (two of four rotating images in upper right-hand corner).

58.     In a video displayed on Defendants' home page, Defendants use Trans-Lux photographs to falsely take credit for a scoreboard at Mohawk Area High School in Bessemer, Pennsylvania as well as the Strong Museum project. *See* http://www.visuacorp.com/.

59.     Defendants also attempt to pass of Trans-Lux's work as their own by affixing Lyte's signature to several other photographs of Trans-Lux works: The Venetian Resort and Casino in Las Vegas, Hoosier Park and the photographs labeled "Ribbon", "Financial", "Marquees" and "Message Tickers" in the "OUR PRODUCTS" section; and also the Strong Museum and Hoosier Park photos in the "PREVIOUS WORK" section. *See* www.visuacorp.com/led#LED-101-Section.

60.     Defendants falsely claim credit for Trans-Lux's work on the Charlotte Knight's beautiful BB&T Ballpark by displaying another Trans-Lux photograph. *See* www.visuacorp.com/about-us.

61.     On their "Clients" page, Defendants falsely represent to the public that they are responsible for hundreds of other projects created by "Visua and Partners".

62.     On the Clients page of the Visua site, Defendants falsely represent approximately twenty (20) of Plaintiffs' clients as their own, including the Charlotte Knights, Utah State University, Soldier Field in Chicago (home of the NFL Chicago Bears), the Winnipeg Football Club, the University of Louisville and others. *See* http://www.visuacorp.com/clients.

63.     In fact, all of these were Plaintiffs' clients and works, not Defendants'.

11

64. Plaintiffs were never partners with Visua.

65. Defendants do not have the right to take credit for Plaintiffs' works or otherwise pass them off as their own.

66. Katt, Galasso and Lyte have violated the above-referenced provisions of their respective Confidentiality Agreements, causing injury to Plaintiffs here in New York.

67. Defendants have failed to return company information and property to Plaintiffs here in New York upon the termination of their employment with Plaintiffs. This property and information includes, but is not limited to, the photographs described herein, and in the case of Katt, a company computer and cell phone containing Confidential Information.

68. Defendants have taken and are improperly using or disclosing Plaintiffs' Confidential Information.

69. Defendants Katt, Galasso and Lyte are disparaging Plaintiffs and Plaintiffs' financial condition in an attempt to lure business away. The purchase of a scoreboard or large LED display requires a substantial up-front deposit by a purchaser. Upon information and belief, Lyte has been falsely telling prospective purchasers that Plaintiffs are close to bankruptcy and therefore, according to Lyte, any purchaser who entrusted Plaintiffs with a deposit would be in great danger of losing the deposit without the project being completed.

70. Trans-Lux recently discovered that Katt, Galasso and Lyte are continuing to besmirch the reputation of Trans-Lux Corporation management and products.

71. Defendants, who knew that Plaintiffs are based in New York, aimed their conduct at Plaintiffs here in New York, and such conduct had and continues to have injurious effect here in New York.

**FIRST CLAIM FOR RELIEF**
**Unfair Competition / Reverse Passing Off – 15 U.S.C. § 1125(a)**

72. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 71 above as though fully set forth at length herein.

73. The video, scoreboard and LED projects described herein originated with Trans-Lux.

74. Defendants have falsely and misleadingly claimed in commercial advertising that they have provided design, installation and other services for LED display and scoreboard projects when such projects were, in fact, provided by Plaintiffs. In so doing, Defendants have falsely designated the origin of Plaintiffs' services and the resulting final products.

75. Defendants' false designation of origin is likely to deceive and cause confusion in the marketplace, including confusion among consumers.

76. As a direct and proximate result of Defendants' actions, as set forth above, Plaintiff Trans-Lux has been, and continues to be, irreparably injured in its goodwill and otherwise.

77. Defendants' continued promotion of itself as the source of services and LED displays executed by Plaintiff Trans-Lux is continuing and will continue, constituting an ongoing threat to Trans-Lux and the public.

78. Defendants' actions as alleged herein are unlawful and in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

79. Unless Defendants are restrained and enjoined from engaging in the conduct described above, Trans-Lux is likely to lose future projects and profits in an amount not yet ascertained, and continue to suffer irreparable injury to its business reputation and goodwill. Plaintiff Trans-Lux's remedy at law is not adequate to compensate it for such harm and damage.

80. Defendants acted and continue to act intentionally, willfully, and with full knowledge of Trans-Lux's rights, making this case exceptional within the meaning of 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF
### False Advertising – 15 U.S.C. § 1125(a)(1)(B)

81. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 80 above as though fully set forth at length herein.

82. The Visua website constitutes commercial advertising.

83. Defendants have falsely and/or misleadingly claimed in commercial advertising that they have provided design and installation services for LED display projects throughout the United States when such LED display projects were, in fact, provided by Plaintiffs.

84. Defendants' statements are commercial speech used in interstate commerce for the purpose of promotion Defendants' business.

85. Upon information and belief, Defendants' false and misleading advertising deceived, tended to deceive and is likely to confuse and deceive a substantial portion of the intended audience.

86. The intended deception is, amongst other things, that Defendants are responsible for creating, providing and delivering Trans-Lux's services and projects and furthermore, that Defendants have the same or superior experience and skill to execute similar future projects without Trans-Lux and that Trans-Lux was not responsible for its own projects.

87. Defendants' false and misleading advertising are material because consumers and potential consumers give weight to past experience and that ability of a company to successfully execute a project. Defendants' false and misleading advertising is thus likely to influence the deceived customers' purchasing decisions.

88. Defendants' false and misleading advertisements have caused and are likely to cause injury to Trans-Lux's business, its business reputation, and its customer goodwill in an amount to be determined at trial.

89. Defendants' actions as alleged herein constitute false advertising and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

## THIRD CLAIM FOR RELIEF
### Violation of New York General Business Law § 349

90. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 89 above as though fully set forth at length herein.

91. New York's General Business Law (**"NY GBL"**) § 349 states in pertinent part:

(a) Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful […]

(h) […] any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

92. Defendants have violated NY GBL § 349 by willfully deceiving the public and potential purchasers as to the source and origin of Trans-Lux's works. Such actions have caused injury to Plaintiffs as well as to the New York consumer public.

93. Specifically, Defendants have used Plaintiff's goodwill to misdirect customers toward its own services.

94. Defendants' wrongful acts are causing damage to Plaintiffs and New York consumers.

95.     Plaintiffs are without an adequate remedy at law to compensate for Defendants' wrongful activity and therefore are entitled to injunctive relief. Further, as authorized by NY GBL § 349(h), Plaintiffs are entitled to recover damages as provided in the statute as well as reasonable attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF
### Violation of New York General Business Law § 350

96.     Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 95 above as though fully set forth at length herein.

97.     NY GBL § 350 states: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

98.     Defendants have violated NY GBL § 350 by willfully using false and/or misleading advertising taking credit for Trans-Lux's projects, including the Strong Museum in the State of New York.

99.     These actions have caused injury to Plaintiffs as well as to the New York consumer public.

100.    Defendants' acts as described herein provide an unfair commercial and financial benefit to Defendants, and have caused or threaten to cause further injury to Plaintiffs.

101.    Plaintiffs are without an adequate remedy at law to compensate for Defendants' wrongful activity and therefore are entitled to injunctive relief.

## FIFTH CLAIM FOR RELIEF
### Common Law Unfair Competition

102.    Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 101 above as though fully set forth at length herein.

103.    Defendants are improperly passing off Plaintiff's works and services as their own, and furthermore are trading upon Plaintiffs' goodwill.

104. Customer and potential customers are being mistakenly led to believe by Defendants that Defendants are the source of Plaintiffs' goods and services.

105. By the acts described above, Defendants have engaged in unfair competition in violation of the common law.

106. Defendants committed the above-alleged acts willfully, in bad faith and in conscious disregard of Plaintiffs' rights.

107. Plaintiffs are entitled to exemplary and punitive damages in an amount sufficient to punish, deter and make an example of Defendants.

108. Defendants' acts are ongoing, and have caused and will continue to cause irreparable injury to Plaintiffs.

109. Plaintiffs have no adequate remedy at law and therefore are entitled to a preliminary and permanent injunction along with damages in an amount to be determined at trial.

**SIXTH CLAIM FOR RELIEF**
**Breach of Contract (against Defendants Katt, Galasso and Lyte)**

110. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 109 above as though fully set forth at length herein.

111. Each of the three individual defendants— Katt, Galasso and Lyte—have written, binding agreements with Trans-Lux and/or Trans-Lux Canada.

112. As described above, Katt, Galasso and Lyte breached their agreements.

113. Plaintiffs have been damaged by these breaches.

**SEVENTH CLAIM FOR RELIEF**

**Breach of Fiduciary Duty and Duty of Loyalty under New York law**
**(against Defendants Katt, Galasso and Lyte)**

114. Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 113 above as though fully set forth at length herein.

115. As highly ranking employees, Katt, Galasso and Lyte each owed a fiduciary duty and a duty of loyalty to Plaintiffs.

116. Katt, Galasso and Lyte breached these duties by taking Plaintiffs' information and materials and by starting a competing business prior to leaving Plaintiffs' employ.

117. As a result of these breaches of duty, Plaintiffs suffered damages and loss to goodwill.

118. During the period from the March 2015 creation of Visua through their respective dates of termination with Plaintiffs, Katt, Galasso and Lyte were faithless servants to Plaintiffs, and Plaintiffs are therefore entitled to recover, in addition to other damages, all compensation, including salary, commissions and bonuses paid to Katt, Galasso and Lyte during this period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that judgment be entered in their favor against Defendants granting the following relief:

A. Preliminarily and permanently enjoining and restraining Defendants and their members, affiliates, divisions, officers, directors, principals, servants, employees, successors and assigns, and all those acting in active concert or participation with them, from the following conduct:

(1) Displaying Plaintiffs' photographs, or photographs of any of Plaintiffs' projects, on the Visua site or in any other commercial advertising or promotional materials;

(2) Misrepresenting the origin of the source of Plaintiffs' services, video, scoreboard, LED displays and/or other projects that were designed in whole or in part by Plaintiffs; taking credit for Plaintiffs' work; or disregarding or disparaging the contribution of Plaintiffs and its many employees as to any of Plaintiffs' projects;

(3)   Holding out in any manner whatsoever that Defendants or their services are in any way sponsored by, associated with, affiliated with or in partnership with Plaintiffs;

(4)   Using any false or misleading designation of origin or false or misleading description which can or is likely to lead to the erroneously belief that any project or thing has been designed, manufactured, assembled, produced, distributed, sold, advertised, displayed, licensed, sponsored, or authorized by or for Visua, when such is not true;

(5)   Engaging in any other activity constituting unfair competition with Trans-Lux or improperly seeking to infringe upon and exploit the goodwill associated with Trans-Lux's work; and

(6)   Violating or continuing to violate the terms of Defendants' respective written agreements with Plaintiffs, including but not limited to disparaging Plaintiffs to customers or potential customers and continuing to withhold Plaintiffs' materials from Plaintiffs.

B.   Ordering Defendants to place corrective advertising on the Visua site stating that Trans-Lux provided the design and installation services with respect to all Trans-Lux projects previously depicted or identified on Defendants' website.

C.   Ordering Defendants to immediately return all Trans-Lux property, including the computer and cell phone in Katt's possession and to pay Plaintiffs' damages and Defendants' profits, each in an amount to be determined at trial

D.   Ordering Defendants to pay enhanced or trebled damages in accordance with the Lanham Act and New York General Business Law.

E.   Awarding Plaintiffs their costs and reasonable attorneys' fees.

19

F. Awarding Plaintiffs punitive and/or exemplary damages in an amount to be determined at trial.

G. Awarding Plaintiffs prejudgment interest on any monetary award.

H. Awarding Plaintiffs such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

As provided by Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby request a trial by jury on all issues raised in this action.

Dated: New York, New York
September 15, 2016

**OLSHAN FROME WOLOSKY LLP**

By: */s/ Scott Shaffer*
Scott Shaffer
Matteo J. Rosselli
Park Avenue Tower
1325 Avenue of the Americas
New York, New York 10019
Tel: (212) 451-2300
Fax: (212) 451-2222
E-mail: sshaffer@olshanlaw;
mrosselli@olshanlaw.com

*Attorneys for Plaintiffs*